IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| BARBARA SHUBERT,  :                              | |
| :                                                         | |
| Plaintiff,         :                                | |
| :                                                         | |
| v.                  :                                | CIVIL ACTION NO. |
| :                                                         | 2:10-CV-00101-RWS |
| SCOPE PRODUCTS, INC. d/b/a  :            | |
| RECONSERVE, INC.,              :                | |
| RECONSERVE, INC. and         :                | |
| RECONSERVE OF GEORGIA      :                | |
| INC.,                                  :                | |
| :                                                         | |
| Defendants.    :                                | |

## **ORDER**

This case comes before the Court on Defendants' Motion to Dismiss [17]. After reviewing the record, the Court enters the following Order.

**I.      Background**

Defendants Scope Products, Inc. et al., bring this motion in response to Plaintiff Barbara Shubert's civil complaint. In her complaint, Plaintiff alleges that Defendants violated her rights under the Equal Pay Act, 29 U.S.C. § 206(d). Plaintiff alleges that Defendants discriminated against her on the basis of her gender by not paying her the equivalent of male employees in comparable positions, by not allowing Plaintiff to participate in a benefits

program in which other equally situated male employees were allowed to enroll, and by not providing the same travel, phone, and automobile privileges that male employees were given. (Dkt. [1] pp. 7-8). Plaintiff began her employment with Defendant in July of 1997. (Dkt. [17-1] pp. 1-3). She signed an Employee Acknowledgment Form ("Form") on or about April 29, 2002 following her receipt of Defendant Scope Product's employee handbook. Id. The Form that accompanied the handbook contained an arbitration clause which stated:

> I agree that employment disputes and disagreements will be submitted to final and binding arbitration to the American Arbitration Association, in accordance with the rules promulgated by the Association, in the event that the disputes and disagreements are not resolved by the Company's Complaint Resolution Procedure. I agree that judgment upon an award rendered by an arbitrator, or arbitrators, will be binding and may be entered in any court having jurisdiction thereof.

(Dkt. [19-1] p. 55). Plaintiff continued to work for Defendants for almost seven years following her signing of the Form. (Dkt. [17-1] p. 1). Her employment was terminated on approximately January 5, 2009. Id. Plaintiff filed her complaint in this Court on June 2, 2010, and Defendants subsequently filed their Motion to Dismiss Plaintiff's Complaint on January 7, 2011. (Dkts. [1, 17]).

2

## II. Discussion

Defendants bring the present Motion to Dismiss Plaintiff's Complaint asserting that Plaintiff's assent to the Employment Acknowledgment Form, including a clause agreeing to arbitrate, is legally binding and bars Plaintiff from bringing the present action without first pursuing arbitration. The Court now examines Defendants' Motion [17].

### A. Standard of Review

The Federal Arbitration Act ("FAA") is "a congressional declaration of liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA established the policy favoring arbitration with the goal of "moving the parties to an arbitrable dispute out of court and into arbitration as quickly as possible." Green Tree Fin. Corp-Ala. v. Randolph, 531 U.S. 79, 85 (2000) (citing Mercury Constr. 460 U.S. at 22). Further, the FAA establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the

3

contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Mercury Constr. 460 U.S. at 24-25.

In order to determine whether Plaintiff must submit her claim to arbitration, the Court assesses whether "(1) there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims." Lomax v. Woodmen of the World Life Ins. Soc'y, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002). As Plaintiff and Defendants in this case dispute all three prongs, the Court will address each issue in turn.

### B. Valid Written Agreement

In order to determine whether a valid and enforceable agreement was entered into between the parties, Georgia contract law governs. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005) (finding that "state law generally governs whether an enforceable contract or agreement to arbitrate exists"). Under Georgia law, a binding contract requires "[a] definite offer and complete acceptance, for consideration." Moreno v. Strickland, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002). Plaintiff argues that the arbitration agreement contained in the Form is not binding because it lacks consideration.

4

"To satisfy the consideration requirement under Georgia law, an accepting party to a contract can either tender bargained-for performance or make a mutual promise." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008) (citing O.C.G.A. § 13-3-42). Plaintiff argues that due to the one-sided nature of the terms of the arbitration clause (the language of the arbitration clause states "I agree..." rather than "The Company and I agree..."), mutuality does not exist. (Dkt. [19] p. 10). Conversely, Defendants argue that Plaintiff's continued employment after her assent to the Form constitutes consideration. (Dkt. [22] pp. 9-10).

The Court finds Defendant's argument to be persuasive. Georgia courts have held that continued employment constitutes consideration for contract purposes. Hiers v. Choicepoint Services Inc., 606 S.E.2d 29, 31 (Ga. Ct. App. 2004). Even assuming that the arbitration clause lacks mutuality of obligation, Defendants' continued employment of Plaintiff (who was an at-will employee) constitutes bargained for performance in exchange for Plaintiff's assent. See Id. (stating that so long as the employee in question was an at-will employee, "his continued employment constitutes valid consideration" when employee signed employer's commission agreement). Therefore, the Employment

5

Acknowledgment Form, and the arbitration clause contained therein, is a valid written agreement.

### C. The Scope of the Agreement

The second factor used to determine the enforceability of an arbitration clause is whether "the issue [sought to be arbitrated] is arbitrable under the agreement." Lomax 228 F. Supp. 2d at 1362. Plaintiff contends that because there is not a specific "Company Complaint Resolution Procedure" as referenced in the arbitration clause and because the clause does not specifically cover statutory issues, Plaintiff's claims against Defendant are not subject to arbitration.

"While arbitration agreements are creatures of contract... [there is a] presumption in favor of arbitration in case of a contractual ambiguity." Id. at 1373. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mercury Constr., 460 U.S. at 24-25. The Court finds that although there is not a specific "Company Complaint Resolution Procedure[,]" there is a "Complaint Procedure" in the Employee Handbook in a section entitled "Equal Employment Opportunity" that outlines a process to utilize "[i]f you experience any job-related discrimination or harassment based

6

on your... sex... or believe you have been treated in an unlawful, discriminatory manner." (Dkt. [19-1] at p. 9). On its face, this language covers Plaintiff's claims of discrimination that occurred during her employment. See Lambert 544 U.S. at 1198 (finding that an arbitration policy and resolution procedure with language akin to that in Defendants' Complaint Procedure "establishes a mandatory program for the resolution of disputes arising from or related to employment").

Moreover, the Court disagrees with Plaintiff's assertion that her termination does not fall within the scope of the arbitration language because it specifically references "employment disputes." "A plain meaning interpretation of [the] language suggests that employment-termination disputes do indeed fall under the scope of the [arbitration clause]... [A] termination is a[n] '[employment] dispute' in the sense that termination is the final stage of a[n] [employment] dispute." Lambert 544 F.3d at 1199. Finally, while the arbitration clause does not explicitly include statutory claims, the broad language[1] of the clause encompasses such claims. The Eleventh Circuit has repeatedly held that

---

[1] The arbitration clause covers "disputes or disagreement between [Plaintiff] and [Defendants]" and "employment disputes and disagreements." (Dkt. [19-1] p. 55).

7

broadly-worded clauses do cover statutory claims. See e.g. Id.; Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1220 (11th Cir. 2000). Therefore, Plaintiff's claims are within the scope of the arbitration clause.

### D. Refusal to Arbitrate

The Court must determine whether "the party asserting the claims has failed or refused to arbitrate the claims." Lomax 228 F. Supp. 2d at 1362. The record indicates that Plaintiff has refused to submit her claims to arbitration. Thus, the Court concludes that all three prongs have been satisfied such that Plaintiff is required to submit her claim to arbitration.

## III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [17] is **GRANTED**.

**SO ORDERED**, this  27th  day of July, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)